ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **AUTORIDAD DE LOS PUERTOS DE PUERTO RICO**<br><br>Recurrido<br><br>v.<br><br>**HERMANDAD DE EMPLEADOS DE OFICINA, COMERCIO Y RAMAS ANEXAS (HEO)**<br><br>Recurrente | TA2026RA00292 | **REVISIÓN** procedente del Departamento del Trabajo y Recursos Humanos Negociado de Conciliación y Arbitraje<br><br>Caso Núm.:<br>**A-24-534**<br><br>Sobre:<br>Laudo de Arbitraje Reclamación de Todos los Empleados Reclasificados a Especialistas de Rescate Aéreo de la Autoridad de los Puertos |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos la Junta de Relaciones de Trabajo (Junta), en representación de la Hermandad de Empleados de la Oficina de Comercio y Ramas Anexas de la Autoridad de los Puertos (Hermandad o Unión), y nos solicita que este Tribunal ponga en vigor el Laudo de Arbitraje Final Núm. A-24-534 (Laudo de Arbitraje) que la Junta emitió el 14 de febrero de 2025.

Por los fundamentos que expresamos a continuación, se declara Ha Lugar la Petición para Poner en Vigor el Laudo de Arbitraje Final Núm. A-24-534.

**I.**

La controversia que dio base al Laudo de Arbitraje tuvo su génesis en la reclasificación que ocupaban los puestos de

Especialistas en Operaciones Aeroportuarias I y II, ubicados en las Escalas 7 y 8 al puesto de Especialista en Rescate Aéreo, ubicado en la Escala 10 del Plan de Clasificación y Retribución de la Autoridad de Puertos de Puerto Rico (Autoridad o Patrono).

Según surge de las determinaciones de hechos del Laudo de Arbitraje, la Autoridad y la Hermandad suscribieron un convenio colectivo con vigencia del 1 de octubre de 2012 hasta el 30 de septiembre de 2016. No obstante, el convenio colectivo mantiene su vigencia, luego de su vencimiento.[1] Se especificó que, la clase de Especialista en Operaciones Aeroportuarias I pertenece a la Escala 7, con un salario mínimo mensual de $1,200.00 en el Plan de Clasificación y Retribución. Por otro lado, la clase de Especialista en Operaciones Aeroportuarias II pertenece a la Escala 8, cuyo salario mínimo mensual asciende a $1,255.00. Posteriormente, el 16 de agosto de 2023, la Autoridad reclasificó los puestos de Especialistas de Operaciones Aeroportuarias I y II y creó la categoría de Especialista en Rescate Aéreo correspondiente a la Escala 10, cuyo salario mínimo mensual aumentó a $2,800.00. Cabe destacar que, originalmente el salario mensual establecido en el convenio colectivo era de $1,400.00.

Conforme surge del Artículo XII, Sección 5(a) del Convenio Colectivo, en casos de reclasificación, el aumento ajusta "la diferencia en básico entre escala o a dos pasos en la escala asignada al puesto, lo que sea mayor". Por lo cual, se solicitó al Patrono la aplicación del pago conforme a lo acordado en el Convenio Colectivo. Ante la denegatoria de la Autoridad, la Hermandad acudió ante el Negociado de Conciliación y Arbitraje para su intervención en esta controversia. Además, la Unión solicitó la adjudicación de

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TA, Entrada Núm. 1, Apéndice 2 – Laudo Núm. A-24-534.

honorarios de abogados, equivalente al 25% sobre la cantidad total que se le reconozca a los querellantes.

Analizada la controversia, el 14 de febrero de 2025, la árbitra Yessenia González Rivera concluyó que la reclasificación realizada por la Autoridad constituyó un ejercicio válido de acuerdo con el Convenio Colectivo. Sin embargo, que al así obrar, el Patrono incumplió con el Artículo XII, Sección 5(a) del Convenio Colectivo. Por lo cual, ordenó el pago correspondiente a la diferencia salarial, más el 20% de la cuantía total adeudada a los trabajadores afectados en concepto de honorarios de abogado.

Ahora bien, en lo pertinente ante nos, el 20 de mayo de 2025, la Unión presentó ante la Junta una *Solicitud para que se Haga Cumplir un Laudo de Arbitraje*.[2] En esta detalló que envió varias misivas al Patrono para solicitar el cumplimiento del Laudo de Arbitraje, sin embargo, la Autoridad no se había comunicado.

Así las cosas, el 23 de mayo de 2025, la Junta envió una comunicación al director ejecutivo de la Autoridad, en donde exhortó a dar cumplimiento con el laudo de arbitraje o llegar a un acuerdo o conciliación con la parte promovente.[3] Además, le otorgó un término de 15 días para exponer su posición por escrito.

Seguidamente, el 9 de junio de 2025, el Patrono presentó una *Certificación*, donde informó que el caso fue referido a la Oficina de Presupuesto de la Autoridad para emitir el pago conforme a la determinación del Laudo de Arbitraje.[4]

Tras un segundo requerimiento de la Junta, emitido el 31 de octubre de 2025,[5] la Autoridad emitió una *Certificación*, el 10 de noviembre de 2025.[6] En este documento, la directora de Recursos Humanos informó que el asunto se refirió a la Oficina de Gerencia y

---

[2] *Íd.*, Apéndice 1 – Solicitud para Poner en Vigor Laudo Núm. A-24-534.
[3] *Íd.*, Apéndice 3 – Carta de la JRT de 23-may-2025.
[4] *Íd.*, Apéndice 4 – Certificación de la APPR de 9-jun-2025.
[5] *Íd.*, Apéndice 5 - Carta de la JRT de 31-oct-25.
[6] *Íd.*, Apéndice 6 - Certificación APPR - 10-nov-25.

Presupuesto para la autorización del pago correspondiente al Laudo de Arbitraje.

El 30 de enero de 2026, la Junta envió una comunicación a la Hermandad y solicitó que se remitiera toda gestión realizada para cumplir con el pago de lo adeudado.[7] Además, que informara la cuantía aproximada de la deuda.

Por su parte, la Unión compareció el 27 de marzo de 2026, indicando que la Oficina de Gerencia y Presupuesto aprobó el desembolso de lo adeudado y varios de los querellantes habían recibido el pago.[8] Agregó que las partidas se desembolsaron de la siguiente manera:

1. $989,159.84: A ser pagaderos a los querellantes, de la cuenta E1170-9168-1680000-1318-001-2026.
2. $129,725.88: A ser pagaderos a los querellantes, de la cuenta E1170-9168-1680000-1318-001-2026.
3. $223,777.14: A ser pagaderos a los querellantes, de la cuenta E1170-9168-1680000-1318-001-2026.

Sin embargo, ante la petición de varios querellantes, requirió el desglose de los pagos realizados por la Autoridad incluyendo la información sobre el periodo de pago, deducciones específicas, entre otros. A esos efectos, solicitó a la Junta que instruyera al Patrono a remitir el desglose de todos los pagos efectuados a los querellantes y cualquier otra información necesaria para el cumplimiento con lo ordenado en el Laudo A-24-534.

Según le fuera ordenado por la Junta, el 24 de abril de 2026, la Autoridad emitió una *Certificación*, en donde informó que cada empleado recibió un talonario con el detalle de la diferencia salarial adquirida.[9] Por otra parte, explicó que el pago por concepto de honorarios de abogado está pautado para la semana de 27 de abril de 2026 al 1 de mayo de 2026.

---

[7] *Íd.*, Apéndice 7 - Carta de la JRT de 30-ene-2026.
[8] *Íd.*, Apéndice 8 - Carta y Certificación de la Unión de 27-mar-2026.
[9] *Íd.*, Apéndice 10 - Respuesta y Cert. de la APPR de 24-abr-2026.

Posteriormente, el 1 de mayo de 2026, la Junta citó a las partes a una reunión presencial, con el fin de promover la negociación colectiva y la paz laboral entre las partes.[10] Así las cosas, apercibió que el incumplimiento con lo requerido facultará a la Junta para presentar una Petición para Poner en Vigor un Laudo conforme a la Ley Núm. 130 de 8 de mayo de 1945, conocida como la Ley de Relaciones del Trabajo de Puerto Rico, según enmendada, 29 LPRA sec. 62 *et seq.* (Ley de Relaciones de Trabajo).

Según alega la Junta, en dicha reunión, la Autoridad manifestó que realizaría los pagos correspondientes a las horas extras trabajadas, según el ajuste salarial derivado de la reclasificación errónea. Asimismo, la Autoridad expresó que el pago adeudado del 20% por concepto de los honorarios, sería tramitado al día siguiente.

No obstante, el 12 de mayo de 2026, la Hermandad presentó una comunicación en la que reclamó que la Autoridad efectuó un pago parcial en concepto de honorarios de abogado, toda vez que aún refleja una deuda ascendente a $223,777.14.[11] Además, el 14 de mayo de 2026, denunció que la Autoridad incumplió con el pago de horas extras, horas en periodo de alimentos de trabajo y días feriados computados a razón del salario establecido en el Laudo de Arbitraje.

Ante el incumplimiento de la Autoridad, el 1 de junio de 2026, la Junta acudió ante este Foro, en representación de la Hermandad, mediante una *Petición para Poner en Vigor el Laudo de Arbitraje Final Conforme al Artículo 9, 2(c) de la Ley 130 de 8 de mayo de 1945, 29 LPRA § 70*. Señaló que, a pesar de que la Autoridad emitió el pago diferencial, este no incluyó el pago de horas extras según el ajuste salarial. Sostiene que la obligación del cumplimiento con el Artículo

---

[10] *Íd.*, Apéndice 11 - Citaciones de la JRT de 1-may-2026.
[11] *Íd.*, Apéndice 12 - Carta de la Unión de 12-may-2026.

XII del Convenio Colectivo comprende las cantidades no satisfechas por concepto de horas extras. La Junta indicó que le corresponde al Patrono realizar las diligencias para realizar el cómputo pertinente. Por otra parte, la Autoridad no ha satisfecho la totalidad del monto adeudado por concepto del 20% de honorarios, cuya cuantía está autorizada y certificada por la Oficina de Gerencias y Permisos. Por lo cual, manifestó que los actos de la Autoridad constituyen un enriquecimiento injusto.

En respuesta, la Autoridad presentó su *Oposición a Petición para Poner en Vigor el Laudo de Arbitraje Final Conforme al Artículo 9, 2(c) de la Ley 130 de 8 de mayo de 1945, 29 LPRA § 70.*

Oportunamente, el 22 de junio de 2026, la Junta instó una *Réplica a la Oposición a Petición para Poner en Vigor el Laudo de Arbitraje Final.*

Así, con el beneficio de la comparecencia de ambas partes y del expediente ante nos, procedemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable.

**II.**

**A.**

El convenio colectivo es el instrumento de mayor importancia de la negociación colectiva en el campo laboral. *HIETel v. Celulares*, 169 DPR 1, 25 (2006). Nuestro ordenamiento jurídico favorece la resolución de disputas obrero patronal mediante el uso del arbitraje. *AAA v. UIA*, 199 DPR 638, 649 (2018). Ergo, el arbitraje constituye un trámite rápido, cómodo, menos costoso y técnico para resolver controversias. *AAA v. UIA*, 199 DPR 638, 649 (2018).

La Ley de Relaciones de Trabajo faculta a la Junta a acudir ante este foro para solicitar que se ponga en vigor un laudo de arbitraje emitido por un organismo competente de arbitraje ya fuera por acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera o en virtud de cualquier acuerdo

firmado por una organización obrera y un patrono en Puerto Rico. 29 LPRA sec. 70. A tenor, el foro con jurisdicción para atender una acción para poner en vigor un laudo de arbitraje será el Tribunal de Apelaciones. *Íd.*; *JRT v. AEE,* 133 DPR 1, 14 (1993). La acción de la Junta para poner en vigor el laudo es un trámite subordinado o auxiliar comparable con la ejecución de sentencia. *JRT v. PR Telephone Co., Inc.*, 107 DPR 76, 80-81 (1978). "Es sabido que un laudo puede ponerse en vigor aun si una parte es válida y otra inválida, siempre y cuando que la parte válida sea claramente separable y pueda subsistir por sí sola". *JTR v. Otis Elevator Co.*, 105 DPR 195, 202 (1976).

El convenio colectivo y el acuerdo de sumisión delimitan los poderes del árbitro y su facultad decisional. *Landrau Cabezudo et al. v. Puertos et al.*, 2025 TSPR 7, 215 DPR __ (2025) (citando a *HIETel v. Celulares, supra,* pág. 27). El Tribunal Supremo exige que los acuerdos sobre arbitraje se cumplan de manera estricta si la sumisión es clara y libre de ambigüedad. *JTR v. Otis Elevator Co.*, 105 DPR 195, 202 (1976). Es decir, la autoridad del árbitro se limita al lenguaje comprendido en el acuerdo de sumisión. *UGT v. Corp. Difusion Pub.*, 169 DPR 674, 683 (2006). En aquellos casos en los que las partes no se ponen de acuerdo para presentar un acuerdo de sumisión conjunto, el árbitro puede determinar cuál es la controversia a resolver. *Landrau Cabezudo et al. v. Puertos et al.*, *supra* (citando a Pérez Rivera, *Breve Tratado de Derecho Laboral de Puerto Rico*, San Juan, Ed. Situm, 2024, pág. 314.).

Los procesos de arbitraje y los laudos emitidos gozan de una especial deferencia judicial. *JRT v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 67 (1987). La determinación de este procedimiento, aunque no constituye un contrato privado ni una sentencia judicial, goza de la naturaleza obligatoria que caracteriza ambos. *JTR v. Otis Elevator Co., supra,* pág. 199. Cuando un laudo no se emite conforme a

derecho, la revisión judicial queda estrechamente limitada. *JRT v. Hato Rey Psychiatric Hosp.*, *supra*, pág. 67. Las determinaciones de un laudo son finales, firmes e inapelables. *JTR v. Otis Elevator Co.*, *supra*, pág. 199. Por lo tanto, un laudo puede ser impugnado solamente en casos de (1) fraude, (2) conducta impropia, (3) falta del debido procedimiento en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, y (6) que no resuelva todas las cuestiones en controversia que se sometieron. *Íd.*; *Colón Molinary v. AAA*, 103 DPR 143 (1974). De lo contrario, el tribunal deberá abstenerse de interpretar el lenguaje contenido en el laudo y la sumisión. *Landrau Cabezudo et al. v. Puertos et al.*, *supra*; *CORP v. SPU*, 181 DPR 299, 328 (2011).

Toda vez que un laudo de arbitraje pone fin a las controversias entre las partes sin intervención de las cortes, "excepto para ponerlo en vigor, tal laudo arbitral debe por sí solo, resolver definitivamente todas las cuestiones sometidas, sin necesidad de modificación o aclaración alguna, por las cortes.". *JRT v. Sindicato Obreros Unidos*, 92 DPR 60 (1965).

**B.**

Nuestra carta magna provee una protección a los trabajadores al establecer que:

> Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario según se disponga por ley. Art. II, Sec. 16, Const. ELA, LPRA, Tomo 1, ed. 1999.

Con el fin de ejecutar esa política pública, la Asamblea Legislativa aprobó la Ley de Retribución, la cual, en parte, "delimita la responsabilidad de los administradores individuales al elaborar sus propios planes de retribución". *Nigaglioni v. Depto. de Salud,* 149

DPR 180, 190 (1999) (*citando a Guzmán v. Depto. de Hacienda,* 147 DPR 46, 56 (1998)).

A tenor, el Reglamento de Personal de la Autoridad de los Puertos de Puerto Rico, Reglamento Núm. 4453 del 24 de mayo de 1991 (Reglamento), dispone que "[l]a retribución de los empleados estará basada en el principio de igual paga por igual trabajo, y deberá guardar proporción con los servicios que prestan, los riesgos ocupacionales y otras condiciones inherentes de su trabajo". Sección 100.1 (c). Más adelante, la sección 101.1 establece que, a esos fines, "[s]e establecerá un Plan de Clasificación que defina los diferentes puestos o posiciones en la organización, así como su categoría". En lo pertinente, la sección 106.1 determina que "[l]a jornada regular de trabajo no excederá de cinco (5) días a la semana ni de siete y media (7 1/2) horas diarias". Consecuentemente, la Sección 106.3 del Reglamento indica que "[t]odo tiempo trabajado en exceso de la jornada diaria, semanal o en días feriados será compensado a razón del doble del tipo de salario que devengue". Incluso, el Artículo XXII, Sección I, del Convenio Colectivo entre la Autoridad de los Puertos de Puerto Rico y la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas de Puerto Rico de 1 de octubre de 2012 al 30 de septiembre de 2016, sostiene que "[l]a Autoridad y la Hermandad podrán mediante acuerdo, hacer excepciones a [la jornada regular de trabajo] siempre que el exceso de 37½ horas se paguen a razón del doble del tipo de salario".

## C.

La compensación opera cuando "dos personas son, por derecho propio, recíprocamente acreedoras y deudoras la una de la otra. Su efecto es extinguir una y otra deuda en la cantidad concurrente, aunque no tengan conocimiento de ella ni el acreedor ni el deudor". 31 LPRA sec. 9122. En otras palabras, la compensación se define "como la extinción de dos obligaciones que

existen en sentido inverso entre las mismas personas, reputándose pagadas totalmente o hasta la concurrencia de la más débil, según que la cifra de la una sea igual o no a la otra". *Toro Sotomayor v. Colón Cruz*, 176 DPR 528, 541 (2009).

Para ello, deben coincidir los siguientes requisitos:

(a) cuando cada una de las personas obligadas lo está principalmente, y es, a la vez, acreedora principal de la otra;
(b) ambas deudas consisten en una cantidad de dinero o, si las cosas debidas son fungibles, de la misma especie y la misma calidad, cuando esta se ha designado;
(c) ambas deudas son líquidas, vencidas y exigibles;
(d) sobre ninguna de ellas hay suspensión de pago o contienda promovida por terceras personas y notificada oportunamente al deudor; y
(e) no existe una prohibición legal. 31 LPRA sec. 9222.

La compensación es una causa de extinción de las obligaciones y se utiliza para simplificar las relaciones jurídicas entre aquellos que están recíprocamente obligados. *Walla Corp. v. Banco com. de Mayagüez*, 114 DPR 216, 220 (1983). Generalmente existen 3 tipos de compensaciones:

[L]a legal, la voluntaria facultativa [o] convencional y la judicial. Legal es la que se opera de pleno derecho, en virtud de concurrir ciertas condiciones requeridas por la ley como necesarias para ello. Facultativa es la que una de las dos partes contratantes puede reclamar levantando el obstáculo que, en su interés solamente, impide que se produzca la compensación de pleno derecho. Convencional, la que tiene lugar cuando, a pesar de no concurrir todos los requisitos de la ley, convienen los deudores y acreedores mutuos en compensar sus obligaciones respectivas. Judicial es la que se opera cuando el juez, en caso de demanda reconvencional formulada por el demandante, liquida el crédito correspondiente a éste, haciéndolo así compensable. Colin y Capitant notan con razón que la verdadera compensación es la legal; la convencional y la judicial son más bien operaciones diferentes.... (Escolio omitido.) Velázquez, op. cit., págs. 217-218. *Ramos v. Caparra Dairy, Inc.*, 116 DPR 60, 66-67 (1985).

La compensación legal opera *ipso jure* desde que concurren las deudas y los requisitos en ley. *Walla Corp. v. Banco com. de Mayagüez, supra,* pág. 221. Sin embargo, su aplicación no ocurre hasta que una de las partes afectadas alega y declara la figura de

compensación, ya fuera judicial o extrajudicialmente. *Ramos v. Caparra Dairy, Inc.*, 116 DPR 60, 67 (1985). Una vez se declara judicialmente, entonces tiene su efecto retroactivo. *Íd.*

### III.

En el caso que nos ocupa, la Junta nos solicita que se ponga en vigor el Laudo de Arbitraje A-24-534, emitido el 14 de febrero de 2025. En síntesis, el petitorio de la Junta requiere que se ordene a la Autoridad a cumplir con: (1) el pago de las horas extras trabajadas según el ajuste salarial derivado de la reclasificación errónea durante el periodo en controversia; y (2) el pago del 20% de los honorarios de abogado, comprendidos en el remanente de $223,777.14.

Previo a ordenar el cumplimiento de un laudo, debemos analizar si el pronunciamiento emitido resuelve completamente las cuestiones presentadas.

La acción de la Junta para poner en vigor el laudo es un trámite subordinado o auxiliar comparable con la ejecución de sentencia. *JRT v. PR Telephone Co., Inc.*, *supra*. El convenio colectivo y el acuerdo de sumisión delimitan los poderes del árbitro y su facultad decisional. *Landrau Cabezudo et al. v. Puertos et al.*, *supra*. El Tribunal Supremo exige que los acuerdos sobre arbitraje se cumplan de manera estricta si la sumisión es clara y libre de ambigüedad. *JTR v. Otis Elevator Co.*, *supra*. Es decir, la autoridad del árbitro se limita al lenguaje comprendido en el acuerdo de sumisión. *UGT v. Corp. Difusion Pub.*, *supra*.

Los procesos de arbitraje y los laudos emitidos gozan de una especial deferencia judicial. *JRT v. Hato Rey Psychiatric Hosp.*, *supra*. Cuando un laudo no se emite conforme a derecho, la revisión judicial queda estrechamente limitada. *JRT v. Hato Rey Psychiatric Hosp.*, *supra*, pág. 67. Las determinaciones de un laudo son finales, firmes e inapelables. *JTR v. Otis Elevator Co.*, *supra*, pág. 199. Por

lo tanto, un laudo puede ser impugnado solamente en casos de (1) fraude, (2) conducta impropia, (3) falta del debido procedimiento en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, y (6) que no resuelva todas las cuestiones en controversia que se sometieron. *Íd.*; *Colón Molinary v. AAA, supra.* De lo contrario, el tribunal deberá abstenerse de interpretar el lenguaje contenido en el laudo y la sumisión. *Landrau Cabezudo et al. v. Puertos et al., supra*; *CORP v. SPU, supra.* Toda vez que un laudo de arbitraje pone fin a las controversias entre las partes sin intervención de las cortes, "excepto para ponerlo en vigor, tal laudo arbitral debe por sí solo, resolver definitivamente todas las cuestiones sometidas, sin necesidad de modificación o aclaración alguna, por las cortes.". *JRT v. Sindicato Obreros Unidos, supra.*

En el caso que nos ocupa, notamos que la controversia presentada ante la consideración del árbitro versa sobre el salario base aplicado a aquellos puestos de Especialistas en Operaciones Aeroportuarias I y II, ubicados en las Escalas 7 y 8; que fueron reubicados al puesto de Especialista en Rescate Aéreo, ubicado en la Escala 10. Esta cuestión se desprende del proyecto de sumisión presentado por la Hermandad. Ante la falta de acuerdo, la árbitro delimitó que la cuestión a resolver era:

> Determinar si la Autoridad de los Puertos de Puerto Rico violó el Artículo XII del Convenio Colectivo al reclasificar a los Especialistas en Operaciones Aeroportuarias I y II como Especialistas en Rescate Aéreo o no. Asimismo, determinar si a los empleados reclasificados se les adeuda una diferencia en el salario básico entre escalas o el equivalente a dos pasos en la escala asignada al nuevo puesto, según lo que resulte mayor, conforme a lo dispuesto en el Artículo XII, Sección 5 del Convenio Colectivo vigente. También se deberá determinar si procede la concesión de honorarios de abogados. En caso contrario, ordenar el cierre y archivo con perjuicio del caso en el Foro de Arbitraje.

Es decir, del propio lenguaje recogido por la árbitro, la controversia giró en torno a la reclasificación de los puestos en Operaciones Aeroportuarias I y II como Especialistas en Rescate

Aéreo. Evaluados los planteamientos, la árbitra concluyó que la reclasificación efectuada por la Autoridad fue un ejercicio lícito de la prerrogativa gerencial. Ahora bien, determinó que la Autoridad violó el Art. XII del Convenio Colectivo, toda vez que no otorgó el aumento salarial correspondiente. Por consiguiente, ordenó el pago de la diferencia salarial calculada restando el salario básico que el empleado percibía en la Escala 7 o Escala 8 al momento de reclasificación. Dicho pago debía cubrir el periodo comprendido desde el 16 de agosto de 2023 hasta el día que se efectuara el pago. A tenor, concluimos que el Laudo de Arbitraje resolvió de manera concluyente la cuestión presentada ante sí.

La controversia ante nos gira en torno al cumplimiento del pago según fuera ordenado en el Laudo de Arbitraje. Pues la Autoridad afirma que cumplió con el pago de la diferencia salarial, toda vez que el mandato fue claro al establecer que se limitaría a evaluar la validez de la reclasificación de los puestos. Por lo cual resalta que el cómputo del salario por horas extraordinarias, beneficios marginales u otros haberes relacionados no fueron planteamientos o controversias presentadas en el proceso de arbitraje. Sostiene que, ordenar el pago de estas partidas sería un ejercicio de interpretación que sobrepasa los alcances del Laudo de Arbitraje.

Por otro lado, la Junta argumenta que, la determinación del laudo razonablemente incluye el cálculo de horas extras, en vista de que la remuneración de las mismas se realizó a base de un salario incorrecto. Señala que el propio Reglamento dispone que el salario básico constituye el fundamento económico para el pago de horas extras dentro del mismo periodo. En consecuencia, señala que le corresponde al patrono realizar diligentemente el cómputo pertinente utilizando los registros de asistencia y de horas

extraordinarias trabajadas por los empleados, a fin de efectuar el pago adeudado.

Nuestra Constitución reconoce el derecho a los trabajadores a recibir igual paga por igual trabajo. Asimismo, reconoce el derecho de trabajar una jornada ordinaria que no exceda de 8 horas. Únicamente se podrá trabajar en exceso siempre que la compensación ordinaria sea una vez y media del tipo de salario que se disponga por ley. Art. II, Sec. 16, Const. ELA, LPRA, Tomo 1, ed. 1999. El Reglamento de la Autoridad identifica estos mismos principios en la Sección 100.1 (c). En lo pertinente, la sección 106.1 determina que "[l]a jornada regular de trabajo no excederá de cinco (5) días a la semana ni de siete y media (7 1/2) horas diarias". Consecuentemente, la Sección 106.3 del Reglamento indica que "[t]odo tiempo trabajado en exceso de la jornada diaria, semanal o en días feriados será compensado a razón del doble del tipo de salario que devengue". Inclusive, asimismo se reconoce en el propio Convenio Colectivo que aun rige entre las partes.

Analizada las posturas de las partes, forzoso es concluir que el Laudo de Arbitraje necesariamente comprende la compensación de las horas extras que fueron trabajadas. La controversia no gira en torno a si realmente esas horas extras se trabajaron, más bien nos encontramos ante un planteamiento sobre el cálculo del salario base que debió utilizarse para efectuar la remuneración por el tiempo adicional a la jornada regular de trabajo. Ello es así porque las horas adicionales se pagaron a base de un salario el cual se determinó que era incorrecto. Por consiguiente, una vez se resolvió el salario base correcto y se ordenó el pago retroactivo al periodo del 16 de agosto de 2023, automáticamente quedó afectado el cálculo del salario de las horas extras. Pues recordemos que el cálculo del tiempo extra se realiza a base del salario establecido a la clasificación que corresponda. Resolver lo contrario permitiría que

la Autoridad se beneficie de su propio error al retener una partida referente a la compensación por el horario adicional.

Referente al segundo requerimiento sobre el pago de honorarios de abogado, la Junta establece que la Autoridad no ha efectuado la totalidad del pago ordenado en vista de que la cuantía certificada y autorizada por la Oficina de Gerencias y Presupuesto asciende a $223,777.14.

La Autoridad informó sobre la existencia de una deuda líquida, vencida y exigible que la Unión mantenía con el Patrono por concepto de licencia sindical y reembolso de salarios y beneficios del Presidente de la Unión. Sostiene que, luego del reconocimiento de la deuda por parte de la Unión, opera la figura de compensación, según dispone nuestro Código Civil. Por lo que, la Autoridad sostiene no ignoró el pago por concepto de honorarios, sino que efectuó el pago correspondiente y aplicó contra dicha partida la deuda preexistente. Ante lo cual, fundamenta que el Artículo XXXI, Sección 3 del Convenio Colectivo, relativo a la licencia sindical, dispone que cuando el funcionario de la Hermandad dedique tiempo completo a atender asuntos de la Unión, la Hermandad reembolsará a la Autoridad el cincuenta por ciento (50%) de su salario. Por consiguiente, insiste en que cumplió con el pago adeudado.

La compensación se opera cuando "dos personas son, por derecho propio, recíprocamente acreedoras y deudoras la una de la otra. Su efecto es extinguir una y otra deuda en la cantidad concurrente, aunque no tengan conocimiento de ella ni el acreedor ni el deudor". 31 LPRA sec. 9122. Existen 3 tipos de compensación, la legal, la voluntaria y la judicial. La compensación legal opera *ipso jure* desde que concurren las deudas y los requisitos en ley. *Walla Corp. v. Banco com. de Mayagüez, supra.* Ahora bien, su aplicación requiere un pronunciamiento judicial. *Ramos v. Caparra Dairy, Inc., supra.*

A la luz del marco jurídico antes expuesto concluimos que no opera la figura de compensación. Pues en este caso no se presentó ante la árbitro la deuda existente ante la Oficina del Contralor. Más aún cuando de la evidencia que obra en el expediente no existe certeza sobre la cantidad adeudada. Por ende, no correspondía que la Autoridad, unilateralmente, aplicara la deducción de una deuda pendiente ante otra agencia.

## IV.

Por los fundamentos antes expuestos, se ordena a la Autoridad a poner en vigor el Laudo de Arbitraje A-24-534. En consecuencia, se ordena a la Autoridad de los Puertos de Puerto Rico, que cumpla con lo siguiente: (1) que compute y efectúe inmediatamente el pago correspondiente a las horas extras trabajadas para cada empleado afectado por el Laudo, para el periodo que comprende desde el 16 de agosto de 2023 al 15 de marzo de 2026; y (2) que complete el pago del remanente del (20%) de la cuantía de honorarios según ordenado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones